IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 0:20-cv-60738-AHS

KATY BROKKE,

    Plaintiff,

v.

7-ELEVEN INC., LIMBACHKRUPA LLC d/b/a
CITGO #14247111 THANK YOU COME AGAIN
and WAWA, INC.,

    Defendants.

_____/

### PLAINTIFF'S MOTION TO REMAND THIS ACTION TO STATE COURT AND FOR ATTORNEYS' FEES

#### PRELIMINARY STATEMENT

Florida law makes plain that *all* entities on the chain of distribution are liable for harm caused by their unreasonably dangerous products. JUUL, an electronic cigarette, is an unreasonably dangerous product. Plaintiff, Katy Brokke, has been harmed by it. Plaintiffs seek redress under Florida law against the entities that promoted and sold JUUL to Ms. Brokke. One of these entities is a Florida citizen. Because there is no diversity jurisdiction or federal question jurisdiction, the Court must remand this case to State Court. Because the removing Defendants lacked an objectively reasonable basis for seeking removal, the Court should require them to pay for attorneys' fees and costs incurred as a result of their improper removal.

#### RELEVANT FACTUAL BACKGROUND

Plaintiffs filed this action in the Seventeenth Judicial Circuit in Broward County on March 3, 2020. The suit was brought by Katy Brokke ("Ms. Brokke" or "Plaintiff") against 7-Eleven,

Wawa, and Limbachkrupa LLC d/b/a Citgo #14247111 Thank You Come Again ("TYCA" or the "Florida Retailer") for injuries she sustained as a result of using JUUL, which she alleged she bought at those retail establishments. (Compl. ¶¶ 3, 4, 5). The Complaint describes how JUUL is defectively designed and lacks adequate warnings (Compl. ¶ 29–55), that those defendants sold or promoted JUUL, and that she was injured. TYCA failed to submit an affidavit or any other evidentiary proof denying or challenging its role on the JUUL distribution chain or that it sold JUUL to Ms. Brokke.

## STANDARD OF LAW

A case "shall be remanded" to state court if it appears that the federal court lacks jurisdiction. 28 U.S.C. § 1447(c). "Removal statutes are construed narrowly, and jurisdictional uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 331 F.3d 1092, 1095 (11th Cir. 1994) ("While a defendant does have a right, given by statue, to remove in certain situations, plaintiff is still the master of his own claim."); *City of Vestavia Hills v. General Fidelity Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) ("[F]ederal courts are directed to construe removal statutes strictly . . . all doubts about jurisdiction should be resolved in favor of remand to state court.") (quoting *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999)). Because removal is a statutory right it "should be construed strictly in favor of state court jurisdiction." M.W. v. Ford Motor Co., No. 8:14-CV-3132-T-24TBM, 2015 WL 1311029, at *2 (M.D. Fla. Mar. 24, 2015) citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-09 (1941).

The removing parties' burden to prove fraudulent joinder "is a heavy one." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). The Eleventh Circuit "caution[s]" the federal court's analysis "must be limited to determining whether Plaintiffs have even an arguable claim. So, any ambiguity or doubt about the substantive state law favors remand to state

court." *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1298–99 (11th Cir. 2007) (citing *Crowe v. Coleman,* 113 F.3d 1536, 1539 (11th Cir. 1997)).

If there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary. *Crowe,* 113 F.3d at 1540. In other words, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

This standard differs from the standard applicable to a Rule 12(b)(6) motion to dismiss. "Nothing in our precedents concerning fraudulent joinder requires anything more than conclusory allegations or a certain level of factual specificity. All that is required are allegations sufficient to establish 'even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants.'" *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1334 (11th Cir. 2011) (internal citations omitted). To determine whether it is possible that a state court would find that the complaint states a cause of action, the Court must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court. *Id.*

## ARGUMENT

**I.    The Court Must Remand the Action Because Plaintiffs Assert a Strict Liability Claims Against the Florida Retail Defendant as Expressly Intended Under Florida Law.**

Section 1441(b)(2) could not be more clear: "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title *may not be removed if any of the*

3

*parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.*" 28 U.S.C. §1441(b)(2) (emphasis added).

Under Florida law, the doctrine of strict liability extends to the *entire* chain of manufacturers, retailers, wholesalers, and distributors of unreasonably dangerous products.  Each entity in the chain of distribution is liable to the plaintiff. *Samuel Friedland Family Enterprises v. Amoroso*, 630 So. 2d 1067 (Fla. 1994); *Siemens Energy v. Medina*, 719 So. 2d 312 (Fla. 3d DCA 1998).  "The underlying basis for the doctrine of strict liability is that those entities within a product's distributive chain 'who profit from the sale or distribution of [the product] to the public, rather than an innocent person injured by it, should bear the financial burden of even an undetectable product defect." *Simon v. Howmedica Osteonics Corp.*, 981 F. Supp. 2d 1232, 1238 (S.D. Fla. 2012) (citing *Amoroso*, 630 So. 2d at 1068).

Federal courts remand product liability actions where a state defendant is in the distribution chain.  *See Barnes v. Bayside Orthopaedics, Inc.*, 2012 WL 162368 (M.D. Fla. Jan. 19, 2012) (finding that the distributor of an allegedly defective medical device put the product in the stream of commerce).  Here, there is no dispute that the Florida Retailer Defendant named in the Complaint is a retailer that sells JUUL.  Because it is in the distribution chain, it may be liable to Plaintiffs.  Accordingly, TYCA is properly joined as a defendant and the Court must remand the action.

This case is most unlike those finding fraudulent joinder.  For example, in *Fowler v. Wyeth*, 2004 WL 3704897 (N.D. Fla. May 14, 2004), the court denied a remand motion where the in-state defendants "affirmatively presented evidence" (by sworn declarations) that they did not market, advertise, sell, distribute, promote, or dispense the product at issue.  There, the plaintiffs failed to controvert that evidence, and the court held those defendants were fraudulently joined.  *See also*

*Devore v. Howmedica Osteonics Corp.*, 658 F. Supp. 2d 1372 (M.D. Fla. 2009) (holding same where the in-state defendants presented an affidavit and other documentary evidence demonstrating no involvement in the sale or distribution of the allegedly defective product); *Carter v. Hitachi Koki USA, Inc.*, 445 F. Supp. 2d 597, 601 (E.D. Va. 2006) (finding same where affidavits were presented) [Def. Notice, at 14].

The Removing Defendants' supporting authority, *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005), is inapposite. The question in *Legg* was whether the district court's order awarding attorneys' fees when it granted the plaintiff's remand motion was in error. In *Legg*, the plaintiff sued three purported in-state defendants who were Wyeth sales representatives. Each sales representative submitted sworn testimony to demonstrate fraudulent joinder. The first sales representative attested he was not a citizen of the relevant state. The second attested he never promoted or sold the product. The third attested she sold the product but did not know of the alleged defect. Because the third sales representative was in the distribution chain, the district court remanded the action to state court and granted the plaintiffs' motion for fees. The Eleventh Circuit reversed the fees award because the district court did not meaningfully consider the affidavits, which demonstrated Wyeth's effort to remove the case was not "improvident" or "unreasonable."

Thus, contrary to *Fowler*, *Devore*, *Carter*, and *Legg*, the Florida Defendant failed to attest, let alone contest, that it sells and promotes JUUL, is in the distribution chain, and may therefore be liable in product liability. Thus, fraudulent joinder does not exist here.

### A. Plaintiffs Sufficiently Allege Harm JUUL.

The Removing Defendants contend that a claim for strict liability against the Florida Defendant will fail because Plaintiff does not adequately demonstrate a causal link between the

JUUL products purchased from the Florida Defendant and Ms. Brokke's injuries. Not so. The Complaint is peppered with allegations that support the fact that Plaintiff's injuries were proximately caused by JUUL products and Ms. Brokke explicitly states she purchased JUUL products at the Florida Retailer Defendant. Compl. ¶ 1, 4, 44, 50,

Plaintiff well-exceeds the "colorable" or "arguable" claim for relief standard when considering remand motions. "All that is required are allegations sufficient to establish even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1334 (11th Cir. 2011). As concerns the Florida Defendant, Plaintiffs specifically alleges "TYCA…directly placed JUUL products on the market with knowledge the products would be used without inspection for defects and dangers. (Compl. ¶ 65). The Florida Defendants knew or had reason to know that youths and adolescents would not fully realize the dangerous and addictive nature of the JUUL products and the long-term complications nicotine addiction can present, or that, due to their youth, inexperience and/or immaturity of judgment, would recklessly disregard such risks.

Moreover, none of Defendants other supporting authority expressly proves their point. And when properly placed in context, these cases offer no support. For example, the Removing Defendants rely heavily on *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512 (S.D.N.Y. 2003). Yet, in *Pelman*, the plaintiffs did "not claim that the [retailers] had any particular knowledge in their possession and not in the public's possession that would require them to post such information." *Id.* at 522. Even further, the court emphasized that the plaintiffs "failed to establish that any of the defendants have produced a product that was so unhealthy as to be outside a reasonable[] consumer's expectations." *Id.*

6

This case is not even remotely the same. *See discussion infra* at I(C) and II. In fact, Judge Orrick, the Federal Judge presiding over the MDL, has even ruled that the plaintiff's claims "alleged that minors were the intended users of JUUL's products and that due to the inability of minors to fully appreciate the risks of using JUUL's ENDS[1], the products are defective under the consumer expectations test." [*Colgate* DE 139,[2] at 27].

Defendants reliance on *In re Diet Drugs* is also unrelated. In that case, the plaintiffs brought "claims in strict liability, negligence, fraudulent misrepresentations, fraudulent concealment, and civil conspiracy against Eckerd, the in-state pharmacy that allegedly distributed and promoted Wyeth's diet drugs." *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine)*, 2004 WL 1824357, at *5 (E.D. Penn. Aug. 12, 2004). What Defendant fails to mention is *why* the court found Eckerd to be fraudulently joined. The court held that the "plaintiffs purchased Pondimin at Mitchell's Drugs and The Prescription Shop, respectively, and not Eckerd." *Id.* Thus, it logically follows that "there is no possibility that these plaintiffs can recover against defendant Eckerd." *Id.* The Removing Defendants here have made no such argument, and as such, this case too is inapplicable.

In the very next paragraph of *In re Diet Drugs*, the Pennsylvania court states: "[t]he Federal courts in Florida **do not explicitly prohibit strict liability claims against retailers who market, advertise, and distribute** prescription drugs to consumers." *Id.* at 6 (citing *McLeod v. W.S. Merrell Co.*, 174. So. 2d 736 (Fla. 1965) and *Campana v. Am. Home Prods. Corp.*, 2000 WL 35547714 (N.D. Fla. Mar. 7, 2000)). Although this case does not concern prescription drugs, it does deal with nicotine—a drug. Therefore, this is the most apt comparison under Florida law.

---

[1] "ENDS" stands for Electronic Nicotine Delivery System.
[2] *Colgate* DE 139 has been attached hereto as "**Exhibit A**."

Defendants' other supporting authority fares no better: they do not involve fraudulent joinder; rather, they involve Rule 12(b)(6) pleading standards where the courts granted leave to amend precisely because the causes of actions asserted could, with more, be viable.  Here, the Court must find that no colorable cause of action exists, which would be error.  For example, in *Echols v. R.J. Reynolds Tobacco Co.*, No. 2:13-cv-14215, 2014 WL 5305633 at *4 (S.D. Fla. Oct. 15, 2014), the court granted various tobacco companies' motion to dismiss where the complaint alleged injury due to smoking various types of cigarette brands, but failed to adequately quantify how much of any one brand was smoked.  Here, by contrast, there is only one brand at issue: JUUL.  Reliance on *Gargano v. Philip Morris USA, Inc.*, No. 10-24042, 2011 WL 2445869, at *2 (S.D. Fla. June 20, 2011) too is misplaced.  The pleading defect there is that the plaintiffs alleged merely that Marlboro cigarettes increased or aggravated the lung cancer risk.  There was no allegation that but for the defectively designed cigarette the injury of increased risk of lung cancer would not have occurred.  Here, Plaintiff alleged actual physical injuries from using JUUL.  It follows that absent her use of JUUL, she would not have been similarly injured.

Based on these reasons, the Court must remand the case to the State Court.

**B. Defendants Have Failed to Prove Their Burden: That It Is Legally Impossible for the Florida Defendants to be Held Liable Under Florida Law.**

In the Eleventh Circuit, a finding of fraudulent joinder is usually reserved for situations where recovery from the nondiverse defendant is a clear legal impossibility.  *See Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1562 (11th Cir. 1989) ("The burden, however, is on Defendants to show that the allegations of the complaint state ***no possible cause of action***") (emphasis added).  Thus, fraudulent joinder should not be found even where the plaintiff has a weak case against a non-diverse defendant; there must be "no possible cause of action" whatsoever.  *See id.*

8

Here, the Removing Defendants have failed to meet this extraordinarily high burden.  Just as the Eleventh Circuit instructed in *Cabalceta*, the Removing Defendants have not demonstrated that it is a legal impossibility for the Florida Defendants to be held liable under Florida law.  Thus, the Court cannot find that the Florida Defendants were fraudulently named as defendants.

### C. Judge Orrick, the Federal Judge Overseeing the MDL, Adjudged that Plaintiffs Stated A Cause of Action in Strict Liability.

As mentioned above, Judge Orrick currently presides over the *In re JUUL Labs, Inc.* MDL.  Prior to transfer and consolidation of the *In re JUUL Labs, Inc.* MDL, Judge Orrick presided over *Bradley Colgate, et al. v. JUUL Labs, Inc.*, 3:18-cv-02499-WHO in the Northern District of California.  In *Colgate*, Defendant filed a Motion to Dismiss on July 24, 2018 on all of the plaintiffs' causes of action—including plaintiffs strict liability claims.  [*Colgate* DE 40].

On October 30, 2018, Judge Orrick entered an Order, which, in pertinent part, **denied** Defendant's Motion to Dismiss for failure to state a claim for design defect.  [*Colgate* DE 66,[3] at 15] ("I find that under the consumer expectations test, plaintiffs have stated a claim for design defect . . . .").  Judge Orrick similarly denied Defendant's Second Motion to Dismiss in *Colgate* as to the strict products liability claims.  **Ex. A**, at 27 ("Plaintiffs have ***plausibly stated a claim for manufacturing and design defect***.  They have sufficiently alleged that JUUL's products are more addictive than necessary to provide an alternative to combustible cigarettes and that the risk of higher levels of addiction do not outweigh the benefits of a nicotine formulation that the body absorbs at twice the rate of a pack of combustible cigarettes with the same amount of nicotine.") (emphasis added).

Thus, Judge Orrick's rulings reject Defendants' theory in this case—i.e., that Plaintiff has no claim in design defect.  And, as is made clear by the preceding case law, where a design defect

---

[3] *Colgate* DE 66 has been attached hereto as "**Exhibit B**."

is sound as it relates to the manufacturer, it remains sound as to the entire chain of distribution—including retailers. Accordingly, fraudulent joinder does not exist here.

## II. Plaintiff's Negligence and FDUTPA Claims Are Not Fraudulently Joined for the Same Reasons as Plaintiff's Strict Liability Claims.

Although Plaintiffs already have shown at least one "possible cause of action" for which the Florida Defendants are (or at least could be) liable for, Plaintiffs negligence and FDUTPA claims provide further avenues for liability.

Defendants argues the Plaintiffs' negligence claim fails for the same reasons as strict products liability. (Def. Notice, at 17). Just the opposite. Because Plaintiff has sufficiently proven his strict products liability claims, his negligence claim is not fraudulently joined either. As explained in detail above, Defendants bear the same heavy burn of proof here: to show that that it is legally impossible, based on the pleadings, that a plaintiff can state a cause of action against the defendant in state court. *See Cabalceta*, 883 F.2d at 1562.

Once again, Judge Orrick's previous rulings on both of Defendants Motions to Dismiss plainly demonstrate not only the possibility of a claim grounded in negligence, but that it has already survived the Motion to Dismiss. *See* **Ex. B**, at 18–19 ("Because [Plaintiff] has sufficiently pleaded reliance on JUUL's representations on the amount of nicotine in the pods, JUUL's motion to dismiss plaintiff's' negligent misrepresentation claim is denied."); **Ex. A**, at 19–20 ("The motion to dismiss the . . . negligent misrepresentation theor[y] is denied as to claims related to JUUL's pharmacokinetics.").

Indeed, the same is true of Plaintiffs' FDUTPA claims. *See* **Ex. A**, at 36 ("Plaintiffs have stated a claim under state consumer protection law . . . [t]he allegations also state an unfair claim under the tethering test because the public policy at issue is tethered to state laws prohibiting the

10

sale of e-cigarettes to minors."). Accordingly, Defendants fraudulent joinder theory lacks merit, and the Court must remand the action.

### III. Plaintiffs Would Be Severely Prejudiced if the Court Severs the Non-Diverse Defendant.

The Supreme Court has long "emphasize[d]" that a court's Rule 21 authority to sever a dispensable nondiverse party "should be exercised sparingly." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837-38 (1989). Before any severance, courts must "carefully consider whether the dismissal of a nondiverse party will prejudice *any* of the parties in the litigation." *Id.* (emphasis added). Courts decline to sever non-diverse defendants where, as here, severance would prejudice plaintiffs by forcing them to "fight a war on two fronts, litigating some of the very same issues in both fora, with the potential for inconsistent results as to those overlapping issues." *Ash v. Providence Hosp.*, 2009 WL 424586 (S.D. Ala. Feb. 17, 2009) (remanding a product liability action, declining Rule 21 severance); *see also Gonzalez v. J.C. Penney Corp., Inc.*, 2005 WL 5304795 (S.D. Fla. 2005).

The Removing Defendants' Rule 21 severance argument is nothing but "a last-ditch attempt to preserve a federal forum." *Ash*, 2009 WL 42486, at n.19. Severance would severely prejudice Plaintiff. Should the Court sever nondiverse defendants and transfer the case to the Northern District of California, that court will not have jurisdiction over this Florida Defendant. It would be unduly cumbersome and costly to litigate the same product defect issues, which require the same type of proof, the same experts, the same arguments, in two different forums. Plaintiff should not face the risk of inconsistent verdicts. Moreover, Plaintiff should not be forced to litigate against the proverbial "empty chair" defendants, when all Defendants are amenable to personal jurisdiction in Florida state court.

11

Severance would have the effect of proverbially standing Florida product liability law on its head. Florida law makes plain that all entities in the chain of distribution may be liable in strict liability. Florida courts expressly adopt the policy of making the product's sellers responsible for even latent defects. Severance here would ignore adherence to that important public policy choice. Thus, in the interest of comity and fairness, the Court should decline to exercise its severance discretion. Simply put, Florida citizens injured in Florida should be able to avail themselves of Florida law in a Florida state court against all entities responsible for causing that injury.

### IV.     The Claims Asserted Are Connected To All Defendants

Removing Defendants argue that the allegations against the Florida Retailer Defendant are not connected to the claims against them. This argument is meritless. They maintain that the Resident Defendant must have exercised some control over JUUL sold by a Removing Defendant. Removing Defendants' supporting cases – *M.W. v. Ford Motor Co.*, No. 8:14-CV-3132-T-24TBM, 2015 WL 1311029, at *4 (M.D. Fla. Mar. 24, 2015) and *Stone v. Zimmer,* No. 09-80252-CIV, 2009 WL 1809990, at *4 (S.D. Fla. June 25,2009) do not stand for this proposition. Those cases involve unrelated or attenuated medical malpractice claims brought against state-defendants with concurrent product liability claims brought against foreign defendants. Here, the claims against all three Defendants are connected – they result from the same nucleus of operative facts: JUUL is defective, these Defendants sold JUUL to Plaintiff, Plaintiff was injured by her use of JUUL purchased at these stores. Thus, the Court cannot find fraudulent joinder here and remand is appropriate.

### V.      No Subject Matter Jurisdictions Exists Under 28 U.S.C.§ 1331.

This action only involves state law tort claims. These claims do not arise under the Constitution, laws, or treaties of the United States. Thus, no federal question exists, and the Court

does not have original jurisdiction. Removing Defendants contention here is nothing more than the proverbial Hail Mary, everything in but the kitchen-sink argument to avoid remand. Just because electronic cigarettes like JUUL are regulated by the FDA and the provisions of the Tobacco Control Act ("TCA"), does not mean these claims "necessarily raise a federal issue." *See* Def. Mtn. at 24. Federal preemption arguments do not create federal subject matter jurisdiction. The TCA provision regarding product liability claims squarely rejects Defendants' very point. Section 916(b) of the TCA dealing with the "Preservation of State and Local Authority," provides: "No provision of this chapter relating to a tobacco product shall be construed to modify or otherwise affect any action or the liability of any person under the product liability law of any State."

Defendants again rely on inapposite case law to support their meritless arguments. *Cf. Lopez v. Chase Bank USA, N.A.*, No. 8:13-CV-1895-T-17MSP, 2014 WL 523475, at *4 (M.D. Fla. Mar. 6, 2015). In *Lopez*, the complaint was based on defendant's violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(g). Here, contrarily, there is no contention that any Defendant violated the TCA. *Lopez v. Chase Bank* cautions:

> Whether a claim arises under federal law for purposes of 28 U.S.C. Sec. 1331 is determined by the well-pleaded complaint rule, which provides that "federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). A well-pleaded complaint presents a federal question where it "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Franchise Tax Board v. Construction Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 23–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). <u>Under the latter analysis, federal question jurisdiction is narrowly construed</u>. *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 810–814, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). <u>"[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction," even where the interpretation of federal law may constitute an element of the state cause of action. *Id.,* at 813. "[T]he state law claim must 'really and substantially involve[</u>

13

>] a dispute or controversy respecting the validity, construction, or effect of [federal] law." *Dunlap v. G & L Holding Group, Inc.,* 381 F.3d 1285, 1290 (11th Cir.2004). (emphasis added).

This case does not "really and substantially involve" federal law. There is no "dispute or controversy respecting" federal law. Because the Court does not have subject matter jurisdiction under 28 U.S.C. § 1331, the Court must remand the case to state Court.

## VI. The Court Should Order Removing Defendants to Pay Attorneys' Fees and Costs.

Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). This determination is left to the discretion of the Court. The sanction of attorney's fees is appropriate where the removing party lacked an objectively reasonable basis for seeking removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). A removing party lacks an objectively reasonable basis where there is no diversity or federal question jurisdiction. *Bentley v. Miami Air Int'l, Inc.*, 2019 WL 1915322 (S.D. Fla. Feb. 27, 2019).

Sanctions are appropriate here because the Removing Defendants lacked any objectively reasonable basis to remove this case. The Florida Defendant is alleged to have sold and promoted JUUL to Plaintiff. It is therefore amenable to suit under Florida product liability law. Fraudulent joinder only exists where (1) a plaintiff fraudulently pled jurisdictional facts to sue a non-diverse defendant—which is not contended here; or (2) there is no possibility that plaintiff can prove a cause of action against the non-diverse defendant.

To "fit" under the second prong, the Removing Defendants ignore the plain reading of the Complaint. They depend upon inapposite case law. They inaccurately argue that Plaintiff cannot establish a colorable claim against the Florida Retail Defendant. And they disingenuously tell the

Court that Florida law and other authority rejects holding the distributor liable. These are all unreasonable arguments, which merit sanctions.

*Legg v. Wyeth*, discussed above, is an apt comparison. There, the Eleventh Circuit reversed the district court's attorney's fee award on a remand motion. In *Legg*, the three nondiverse defendants submitted affidavits to prove either they were (1) in fact diverse; (2) not part of the distribution chain; or (3) had a good-faith argument that no cause of action could exist against a drug manufacturer's sales representative because she was unaware of the product defect. This case presents the opposite. None of the Florida Defendants present any affirmative proof to defeat the presumption they may be liable in strict liability because they are on the distribution chain.

Accordingly, the Court should award attorneys' fees and costs Plaintiffs' incurred because of this improper removal.

Pursuant to Local Rule 7.1, counsel for Plaintiff conferred with Counsel for JUUL Labs, Inc. prior to filing this motion. Counsel for JUUL Labs opposes Plaintiff's request.

## CONCLUSION

Based on the foregoing, the Court should remand the action to the Circuit Court of the Seventeenth Judicial Circuit In and For Broward County, Florida, award attorneys' fees and costs, and grant such other and further relief the Court deems just and proper.

Dated: April 13, 2020　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　By: /s/ Jeffrey L. Haberman

Scott Schlesinger  
Jonathan Gdanski  
Jeffrey Haberman  
scott@schlesingerlaw.com  
jonathan@schlesingerlaw.com  
jhaberman@schlesingerlaw.com  
**SCHLESINGER LAW OFFICES, P.A.**  
1212 SE 3rd Avenue  
Fort Lauderdale, FL 33316  
Telephone: (954) 467-8800  
Facsimile: (954) 320-9509  

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2020, I served the foregoing on the Clerk of Court by CM/ECF, which will provide notification to all parties and counsel of record; and I served a copy of the foregoing and the attachments thereto by US Mail on the following:

Limbachkrupa LLC  
c/o Maulik Nayee  
1451 North Dean Road  
Orlando, FL 32825  

*Defendant Pro Se*

G. Jeffrey Vernis  
Ashley Landrum  
VERNIS & BOWLING OF  
PALM BEACH, P.A.  
884 U.S. Highway One  
N. Palm Beach, FL 33408  
Telephone: 561-775-9822  
gjvernis@national-law.com  
*Attorneys for Defendant Wawa, Inc.*

s/Jeffrey L. Haberman  
Jeffrey L. Haberman  